UNITED STATES of America

v.

Nathan Earl COOK and Larry James Phelps.

Appeal of Larry James PHELPS.

No. 75–2413.

United States Court of Appeals, Third Circuit.

Submitted May 24, 1976.

Decided June 30, 1976.

Before MARIS, ADAMS and HUNTER, Circuit Judges.

### OPINION OF THE COURT

ADAMS, Circuit Judge.

Larry Phelps was tried for armed robbery of a bank. In response to questions about a possible firearms violation, the government, in order to disabuse the jury of any notion that Phelps might legally possess a gun, introduced evidence that Phelps had previously been convicted of sodomy, and thus by possessing a pistol at the time of the arrest was in violation of federal statutes.[1] It is the admissibility of the evidence regarding the crime of sodomy that must be assessed on this appeal.

#### A.

On February 19, 1975, a bank in Delaware was robbed by a lone gunman, who then fled in a car driven by another man. The gunman, Nathan Cook, was picked up by police forty-five minutes later, while operating a car owned by Phelps. Later that night Phelps himself was arrested in Maryland. At the time of his arrest, he was in possession of a large amount of cash. In the automobile in which Phelps was a passenger, the police found a pistol that matched the description of the gun that had been used in the bank robbery.

Cook confessed that he had participated in the bank robbery and when his confession was upheld, he pleaded guilty. Thereafter, Phelps' trial took place and Cook testified that a third man, Robert Acker, had been his accomplice in the robbery. Cook also said that he owned two identical pistols: one he had used in the robbery, and the other had been taken from him by Phelps.

The only evidence produced against Phelps, aside from his possession of the pistol and cash,[2] was testimony to the effect that (1) Phelps and Cook had been together the night before the robbery and the two

Joseph A. Hurley, Sullivan, Hurley, Farnan & Falasca, Wilmington, Del., for appellant.

W. Laird Stabler, Jr., U. S. Atty. by John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for appellee.

1. 18 U.S.C. § 922(h) and 18 U.S.C.App. § 1202.

2. At trial an F.B.I. agent testified that the cash taken from Phelps on arrest was in the form of one, five, ten and twenty dollar denominations. In cross-examination, the defense counsel asked a question which presumed that the money stolen consisted, at least in part, of fifty

had left together the next morning; and (2) Phelps was arrested in the company of a woman to whom Cook had relayed a message after being detained by police following the bank robbery.[3] Acker's wife was the sole defense witness at Phelps' trial. She testified to having heard Acker, while under the influence of alcohol, speak about participation in a bank robbery.

During the cross-examination of the federal agent who had arrested Phelps and discovered the pistol, the defense attorney asked the agent whether it was a federal crime to transport an unregistered firearm across state lines. The agent answered that it was not, and further testified that the seized pistol appeared to be a legal weapon. The defense attorney next asked whether it was against Maryland law to carry a concealed weapon. The agent answered affirmatively, adding that there were criminal penalties for such conduct. .

On redirect, the prosecutor began to ask, "Assuming that the defendant here had been at the time [he possessed the gun] a convicted felon . . . ," but was interrupted by an objection. At side bar the prosecutor argued that the defense had opened the door to questions regarding the lawfulness of Phelps' possession of the gun, and that evidence of prior crimes by Phelps had become admissible to rebut the impression that Phelps had broken no laws by having the pistol.[4] The defense counsel asserted that his general inquiry concerning the firearms laws was theoretical and not made in reference to the defendant.

The trial court then allowed the government to place before the jury state court records showing Phelps to have been convicted of sodomy prior to his possession of the gun. Those records also indicated that

Phelps had been in prison for an undisclosed offense at the time of the sentencing on the sodomy conviction. After admitting these documents, the trial judge stated to the jury:

As I understand the record, there was an effort by defense counsel to bring out that the possession by this Defendant of a firearm under United States law was not illegal. The government then offered to prove that if a person who carried a gun had a record of a felony, it was illegal. And I permitted the introduction of the record of this Defendant, a record of a felony, conviction of a felony on the part of this Defendant, solely for the purpose of putting before you the fact that a convicted felon cannot legally under U.S. law be in the possession of a firearm. Do you understand that it has nothing to do with the guilt of this Defendant in this case as charged whatever. It is simply to refute the impression given that there was nothing illegal under U.S. law for this Defendant to have had this firearm in his possession. It was for the sole purpose of showing that in fact if he were a convicted felon he couldn't legally under United States law carry this firearm. That's the sole purpose for which [t]his evidence is admitted.

■ After the jury returned a verdict of guilty, Phelps filed a timely appeal. We reverse and remand for a new trial on the ground that the trial court abused its discretion, in the particular circumstances of this case, by permitting evidence of the sodomy conviction to go before the jury.

### B.

Phelps points to the general rule against admission of evidence of other crimes, and

---

3. The message was to the effect that "something had gone wrong." Appellee's brief at 4.

4. Because Phelps had been previously convicted of felonies punishable by imprisonment for a term exceeding one year, his possession of the gun constituted evidence of a violation of 18 U.S.C. § 922(h), and 18 U.S.C.App. § 1202. He had not, however, been charged under these statutes.

and one-hundred dollar bills. The record on appeal, contains no indication that "bait money" was found on the appellant, and the parties' briefs do not refer to the recovery of any "bait money."

With regard to the gun, an F.B.I. agent also testified that Phelps had, while in custody, tried to flush bullets down a toilet. The bullets matched those found in the clip of the seized gun.

contends that the government did not meet its burden of showing the relevancy and materiality of the questionable evidence. He further argues that the government failed to demonstrate that the probative value of the evidence outweighed its extraordinarily high potential for unfair prejudice.

The government asserts that the evidence was made relevant when the defense posed the question regarding the lawfulness of Phelps' possession of the gun. It claims the right to introduce the prior conviction in order to negate the inference of innocent possession. The prosecutor concludes that the admission of such evidence is committed to the discretion of the trial judge, and is not reversible in the absence of an abuse of discretion.

In recent decades the common law rule against the introduction of proof of other crimes has been so greatly eroded that the exclusion of such evidence has become the exception to the general rule permitting the admission of evidence of other crimes if it is relevant to a material issue at trial. Thus, this Court has stated:

> "Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity of disposition on the part of the defendant to commit the crime." [5]

A similar statement has recently been adopted in Rule 404(b) the Federal Rules of Evidence.[6]

The expanded admissibility of evidence of other crimes has not, however, rendered the traditional rule a completely dead letter. Rather, the proliferation of exceptions has caused the courts to adopt a less mechanical balancing test in order to preserve the fundamental rule: [7]

> . . . the trial judge may, in the exercise of his sound discretion, exclude evidence which is logically relevant to an issue other than propensity if he finds that the probative value of such evidence is substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice.[8]

The Fifth Circuit has outlined some of the considerations relevant to the balancing process:

> ". . . we must balance the actual need for that evidence in view of the contested issues and the other evidence available to the prosecution, and the strength of the evidence in proving the issue, against the danger that the jury will be inflamed by the evidence to decide that because the accused was the perpetrator of the other crimes, he probably committed the crime for which he is on trial as well. . . . The treasured principles underlying the rule against admitting evidence of other crimes should be relaxed only when such evidence is genuinely needed and would be genuinely relevant." [9]

---

**5.** *United States v. Stirone*, 262 F.2d 571, 576–577 (3d Cir.), *rev'd. on other grounds*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). *Accord, United States v. Trotter*, 529 F.2d 806, 813 (3d Cir. 1976); *United States v. Hines*, 470 F.2d 225 (3d Cir.) *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1972).

**6.** *See* also Federal Rules of Evidence, Rule 403. The case precedents cited in this opinion arose from trials occurring prior to the effective date of the Federal Rules of Evidence (July 1, 1975). The trial in the present case was held in August, 1975. The new rules however, do not conflict with the earlier precedents in this area of law. Hence, our discussion here is applicable to the new Federal Rules of Evidence.

**7.** *United States v. Miller*, 500 F.2d 751, 752 (5th Cir.) *rev'd. on other grounds,* —— U.S. ——, 96

S.Ct. 1619, 48 L.Ed.2d 71 (1976); C. McCormick, *Evidence* § 190, at 453 (2nd ed. 1954).

**8.** *United States v. Stirone, supra,* at 576 (evidence admitted). *Accord, Government of the Virgin Islands v. Toto,* 529 F.2d 278 (3rd Cir. 1976) (evidence excluded); *United States v. Papadakis,* 510 F.2d 287 (2d Cir. 1975) (evidence admitted); *United States v. Hines, supra* (evidence admitted). *See also United States v. Miller,* 500 F.2d 751 (5th Cir. 1974) (evidence excluded).

**9.** *United States v. Goodwin,* 492 F.2d 1141, 1150 (5th Cir. 1974). *Accord, United States v. Miller, supra* at 762. *See also, Michelson v. United States,* 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Government of the Virgin Islands v. Toto, supra* ; 2 Wright, Federal Practice & Procedure § 410 at 123.

■ This balancing test is the modern bastion of a long standing tradition that protects a criminal defendant from "guilt by reputation"[10] and from "unnecessary prejudice."[11] Because the weighing entails competing interests, it is delicate, and must be employed with care lest accommodation to the prosecutor's needs result in subverting a principle that is central to our concept of fairness.[12] We are not the first Court to caution against allowing the exceptions to swallow this important rule.[13]

■ Normally evidence of other crimes becomes admissible to prove some aspect of the offense charged, such as motive, opportunity, intent, preparation, plan, or absence of mistake or accident.[14] Another recognized purpose, however, is to dispel an exculpatory implication implanted by the defense attorney during cross-examination of the prosecution's witnesses.[15]

■ Where, as here, evidence of other crimes is relevant to a collateral issue only, the trial court must consider the government's actual need for that evidence. The necessity for the testimony in question must be measured against the high potential that proof of a prior offense has for

arousing the jury against the accused.[16] To apply these precepts, it must be recognized that there are substantial possibilities, in the context of this case, that a jury will harbor strong adverse sensitivity to evidence of homosexual or deviant behavior. This creates a significant "risk" of "undue prejudice" which must be overcome by a showing of necessity by the government.[17]

■ In the situation here, evidence of other crimes was of little probative value to the government's case. The cross-examination attempted by defense counsel had already disclosed that the possession of the gun by Phelps probably constituted a state criminal offense. The defense has not, as the government asserts, created an inference that Phelps was lawfully in possession of the gun. At best, the jury might have inferred that possession of the gun was lawful under federal law, but illegal under state law. This is a distinction which could not have significantly aided Phelps. If the inference suggested to the jury is only vaguely favorable to the defendant, is irrelevant to the issues at trial, and does not truly harm the government's case, then the need to refute that inference is not suffi-

**10.** *Government of the Virgin Islands v. Toto,* supra at 283.

**11.** *United States v. Ring,* 513 F.2d 1001, 1004 (6th Cir. 1974).

**12.** Wigmore states that the rule of exclusion of evidence of unrelated bad acts in a criminal prosecution represents a "revolution in the theory of criminal trials, and is one of the peculiar features, of vast moment, which distinguishes the Anglo-American from the Continental System of Evidence." 1 Wigmore, Evidence (3rd Ed. 1940) § 194, p. 647. The modern implications of the rule have been noted by a recent commentator:

The prejudicial effect that knowledge of a defendant's prior conviction has on a jury has long been recognized. *See* H. Kalven & H. Zeisel, The American Jury 160 (1966) (a statistical study showing that when a defendant's criminal record is known and the prosecution's case has contradictions the defendant's chances of acquittal are 38%, compared to 65% otherwise). Also *see, e. g., Loper v. Beto,* 405 U.S. 473, 482–83 n.11, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); Fed.R.Evid. 405, Advisory Committee Notes; Note *Recidivist Procedures: Prejudice & Due Process,* 53

Cornell L.Rev. 337, 338 (1968); Note, *Other Crimes Evidence at Trial: Of Balancing & Other Matters,* 70 Yale L.J. 763 (1961); J. Weinstein & M. Berger. *Weinstein's Evidence* § 609 at 609–46, 404–41 (1975).
Note, Prior Convictions Under the Gun Control Act of 1968. 76 Columbia Law Review, March 1976, No. 2 p. 343 n.95.

**13.** *United States v. Miller, supra; United States v. San Martin,* 505 F.2d 918, 923 (5th Cir. 1974).

**14.** Federal Rules of Evidence, Rule 404, 28 U.S.C.A.; 6 Wigmore, Evidence (3rd Ed. 1940) § 1865 et seq.

**15.** *Cf., United States v. Lewis,* 524 F.2d 991 (5th Cir. 1975); *United States v. Chrzanowski,* 502 F.2d 573 (3d Cir. 1974); *United States ex rel. Choice v. Brierley,* 460 F.2d 68 (3d Cir. 1972); *United States v. Walker,* 421 F.2d 1298 (3d Cir.) *cert. denied,* 399 U.S. 931, 90 S.Ct. 2261, 26 L.Ed.2d 799 (1970).

**16.** *See* footnote 8, *supra.*

**17.** *See* footnote 7, *supra.*

cient to outweigh the risk of prejudice that would be posed by the introduction of evidence of other crimes.

Even assuming that the trial court was correct in allowing the jury to learn that Phelps had been previously convicted of a felony, there was no need to inform the jury of the *nature* of that felony. The government could have used the more abstemious approach of asking Phelps to stipulate that he had been convicted of a felony, thereby avoiding undue prejudice from the introduction of proof of the sodomy conviction. To have made the jury aware of the nature of the offense went beyond the purpose for which the government asserted the right to introduce evidence of other crimes.[18]

■ Another factor about the admission of this evidence disturbs us. The pre-sentence report shows that, in addition to the sodomy conviction, Phelps had been convicted of a number of other felonies, and each would have established that his possession of the gun was improper. There is a strong inference that the prosecutor selected that conviction which he believed would have the greatest potential for inflaming the jury. Where the prosecutor has shown an actual need for evidence of other crimes, trial judges should in circumstances such as we encounter here take care to minimize the potential for prejudice by excluding evidence of the *nature* of the felony altogether, or by inquiring as to the existence of a different, less provocative offense.

Accordingly, we conclude that it was an abuse of discretion, in the circumstances of this case, to admit Phelps' conviction of sodomy.

### C.

■ The government, in arguing that no prejudice resulted to the defendant by rea-

son of the admission of evidence of the sodomy conviction, seems to suggest that this is a case of harmless error. We cannot agree. The properly admitted evidence produced against Phelps was not overwhelming. On the other hand, the nature of the crime disclosed to the jury here, had a high potential for arousing the jury against Phelps. Therefore, we cannot say that it is "highly probable" that evidence of the prior conviction did not contribute to the jury's verdict.[19]

### D.

The judgment of conviction will be reversed and the cause remanded for a new trial.

---

**18.** *Cf., United States v. Smith*, 520 F.2d 544 (8th Cir. 1975) Note, Prior Convictions Under the Gun Control Act of 1968, 76 Columbia Law Review, March, 1976, No. 2, pp. 326, 343–349.

**19.** *Government of the Virgin Islands v. Toto, supra* at 284. *See also Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Carney*, 461 F.2d 465, 467–468 (3rd Cir. 1972); *United States v. Clarke*, 343 F.2d 90 (3d Cir. 1965); 28 U.S.C. § 2111; Rule 52(a) Federal Rules of Criminal Procedure.