**UNITED STATES of America**

v.

**Francis P. LONG, a/k/a "Red", John Hackett, a/k/a "Jack", Appellant.**

No. 76–2508.

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1977.

Decided March 6, 1978.

---

26. *Id.*

Robert J. Cindrich, McVerry, Baxter, Cindrich, Loughren & Mansmann, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty. by Edward J. Schwabenland, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS and GARTH, Circuit Judges, and LACEY,* District Judge.

## OPINION OF THE COURT

LACEY, District Judge.

Appellant Long was convicted by a jury in the District Court for the Western District of Pennsylvania of conspiracy, obstruction of justice, and making a false material declaration to a grand jury (perjury), in violation of 18 U.S.C. §§ 371, 1502–1503 and 1623, respectively. Long was sentenced to thirty days' imprisonment on the conspiracy count and received a suspended sentence and three years' probation on the remaining counts. Additionally, he was fined $25,000 and costs.

On appeal, Long makes three contentions.[1] Two of his arguments, that probable cause to issue a search warrant was lacking and that certain envelopes which contained written notations were improperly admitted into evidence at trial (Arguments II & III), we find to be totally without merit, and require no discussion. Long's other contention is that evidence of other crimes, *i. e.*, payoffs, was improperly admitted into evidence at trial because its probative value, if any, was substantially outweighed by its prejudicial effect. *See* Fed.R.Evid. 403.[2] This claim too we find without merit; however, given the concurring opinion's analysis of the issues involved, a review of the evidence and of Rules 103, 403 and 404(b) of the Federal Rules of Evidence is appropriate.

## THE EVIDENCE

■ On this appeal, we must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The evidence of Long's guilt was overwhelming. Thus the jury heard evidence to the following effect: on October 16, 1974

---

* Frederick B. Lacey, United States District Judge, District of New Jersey, sitting by designation.

1. Appellant formulated his arguments on appeal as follows:

  I. The District Court erred in denying appellant's motions for withdrawal of a juror based upon the introduction of evidence of other alleged criminal activity.

  II. The District Court erred in admitting hearsay evidence in the form of documents and testimony.

  III. This District Court erred in denying appellant's motion to suppress illegally seized evidence because the facts set forth in the affidavit to the search warrant do not establish probable cause, in that those facts were based upon the uncorroborated statements of an unnamed informant whose reliability was not properly established.

2. Fed.R.Evid. 403 reads as follows:

  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Long, a garbage contractor, met with two North Braddock, Pennsylvania, councilmen, Irvin (who had been recently elected) and Hackett (a veteran of the political wars in the North Braddock area). Long and Hackett were unaware that Irvin had become an F.B.I. informant, that he had advised Special Agent Stewart of the F.B.I. that he and Hackett would receive a bribe from Long at this meeting, and that he, Irvin, had been furnished and was wearing at this meeting a concealed tape recorder which recorded the entire conversation.[3]

That the pay-off was made, just as Irvin had predicted, is reflected by the recording of the October 16 conference, played for the jury without objection.[4]

The cash was divided into nine envelopes (one for each councilman), and Long was heard to suggest that a "sticker" be put on them "so we'll know that nobody touched it . . . ." App. 227a–228a. Long, obviously referring to the cash he had delivered to Irvin and Hackett, then implicates himself in the pay-off scheme when he is recorded as saying: "So that straightens you up to October, see and then every two months you know. . . . It's only $120." [5] App. 229a.

Since Irvin and Hackett were stopped and searched, pursuant to a search warrant, by the F.B.I. immediately after leaving Long, and relieved of the nine envelopes and the cash he had given them, the defendants had to and did admit that on October 16 Long had given Hackett and Irvin a total of $2,160.[6]

Hackett, so the events (and the tapes) reveal, was a quick thinker.[7] He immediately formed the "cover" story that Long had agreed to buy a total of 2,160 raffle tickets, evenly divided, from the nine councilmen. Unfortunately for him (and Long), their scheme was being memorialized on Irvin's body tape recorder.

Thus the jury heard Hackett tell Irvin that the "cover" story was weakened by the "odd" figure, $2,160, and the "9 envelopes," but "Red" (i. e., Long) "would say that he always gives us money . . . for each election." App. 241a. Hackett then tells Irvin that he will speak to Long. App. 244a. The jury also hears Hackett state to Irvin (App. 246a): "I had a feeling not to take that money. . . ."

Within two days after the F.B.I. search, and in two separate deliveries, 2,160 raffle tickets were delivered to Long. The first delivery of 2,000 was by Hackett and Irvin. The following day Hackett's son delivered 160 tickets to Irvin who in turn delivered them to Long. According to Irvin's testi-

---

**3.** Irvin, newly elected to the North Braddock Council (App. 197a), had learned as early as March 1974 that Long had been paying off North Braddock councilmen. App. 201a–204a. In May 1974 he reported this fact to the local police chief who referred him to Special Agent Stewart; thereafter, Irvin cooperated with Stewart because "he didn't think it was right" (i. e., councilmen getting pay-offs). App. 279a.

Pretrial motions to suppress the tapes had been denied. App. 2a.

**4.** Thus Long is heard to say (App. 227a): "Just opened [sic] up the envelope, there's two $100 bills and two $20, just check it there. I told Malley I couldn't get that when you first called."

**5.** Hackett and Long were tried together. As a part of its case the government read to the jury the November 1, 1974 grand jury testimony of each. In the grand jury proceeding, the prosecutor embodied in a question to Hackett the language used by Long (App. 408a):

Q. Now, isn't it a fact that the $240 was a payment to the councilmen of North Braddock, nine envelopes, one for each councilman containing $240, which would bring them up to date for their payoffs from the hauling until October?

Hackett answered: "No."

His response is contradicted by the recording.

**6.** Hackett was obviously unaware of Irvin's cooperation with the F.B.I. Thus, immediately after the search, as he wonders how the F.B.I. had been "tipped," he opines that "[w]e shouldn't a said anything to anybody last night, huh." App. 240a–241a.

**7.** Hackett, on November 1, 1974, was recorded by Irvin as stating (App. 257a): ". . . I had mentioned it to Stewart when he grabbed that money, I said that's the ticket money, *I just thought real quick, ya know* . . . ." (emphasis supplied).

mony, Long agreed to go along with the contrived tale.[8]

The defendants and Irvin, who was still secretly cooperating with the F.B.I., went before a federal grand jury on November 1, 1974.

The body recorder, which had not functioned on October 17 and thereafter, was once again concealed on Irvin's person and was recording as he and Hackett drove to the federal courthouse for their grand jury appearances. The recording of this conversation was played for the jury, again without objection.

Thus the jury heard Hackett relate to Irvin that the day before (October 31) he, Hackett, had met with Long and counsel "from 12 o'clock till about a quarter after one." One of the participants was described by Hackett as "one of the best criminal attorneys." [8a] App. 258a. The jury then heard Hackett describing what had occurred at the meeting as he and Long were being prepared for their grand jury appearances, with Hackett quoting Long (App. 260a) as the latter reviewed the raffle ticket story at this meeting.

Hackett then states to Irvin (App. 260a): "We're fortunate Roman had those 2,000 tickets."

The recording thereafter reflects Hackett advising Irvin how to handle before the grand jury his own part in the plot. App. 260a–265a. In what was obviously an attempt to keep Irvin "in line," Hackett warns him (App. 265a): ". . . If they've been getting it for fifteen years and you've been getting it for one month, you're just as guilty as they are."

Hackett's callousness is exemplified by his stating to Irvin (App. 270a): "Wish we was [sic] in criminal court, we'd have the fix in already."

By his own words, as replayed for the jurors, Hackett stood before them guilty as charged. His grand jury testimony was read to them (App. 395a–448a) after they had heard the recordings and Irvin's testimony, which reinforced and supplemented the recorded material. Hackett's grand jury testimony faithfully follows the scenario he had unwittingly placed on Irvin's tape recorder, on November 1, preceding the grand jury appearance.

Once Hackett's defense crumbled, Long too was doomed in view of the interlocking of their "raffle ticket" explanations. This point is eloquently made by the fact that, while the recording of the October 16, 1974 meeting demonstrated that the subject of raffle tickets was never mentioned or discussed, the jury heard Long, in his grand jury testimony, state that it was. App. 371a–394a. Added to the jury impact of this bald inconsistency is the description of the October 31 meeting, as embodied in Hackett's recorded conversation with Irvin on November 1, implicating Long in the cover-up. Thus Long, like Hackett, could have escaped a guilty verdict only through a gross miscarriage of justice.

### THE CHALLENGED TESTIMONY

The testimony which is the subject of the claim of trial error was given by Irvin, as follows:

Q. Now, on November 1, 1974, did you have lunch while waiting to go to the Grand Jury?

A. Yes, I did.

Q. Who was present at that lunch?

A. Mr. Pruchnitzky and Mr. Long.

Q. During that lunch, what conversation if any, did you have with Mr. Long concerning garbage contracts?

A. He told me at lunch that day, that he was still paying off in Duquesne, Munhall, Homestead and Rankin.

---

8. On October 17, 1974 when Hackett and Irvin told Long of the F.B.I. seizure on the previous day, Long stated, according to Irvin (App. 251a): ". . . we were finished. We were beat. We were sunk and he never should have never [sic] given us the money in the beginning."

8a. Long's attorney at trial and on appeal was not counsel to Long at this pre-indictment stage.

MR. CINDRICH: This is objected to. That is not a proper place in this trial.

THE COURT: Objection overruled.

BY MR. ROARK:

Q. What was the conversation?

A. He said he was still paying off in the Boroughs of Duquesne, Munhall, Homestead and Rankin.

App. 278a–279a.

## DISCUSSION

█ To ascertain whether the admission of this challenged testimony amounted to reversible error, our analysis begins with Rule 103(a) of the Federal Rules of Evidence:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .

This Rule incorporates the concept of harmless error. Given the overwhelming evidence of Long's guilt, we have no hesitancy in stating that, assuming arguendo that the trial judge improperly admitted the challenged evidence, no "substantial right" of Long was "affected" and reversal would thus be unwarranted.

Next, we consider whether the admission of the challenged matter was error. The Federal Rules of Evidence require objecting counsel to be "specific" in stating grounds for an objection. Rule 103(a)(1). The reason for this is obvious. The trial judge is thereby alerted to the issue raised by the objection.

█ Long's lawyer made what was anything but a specific objection to the evidence in question.[9] Charitably, it may be said that, as later supplemented by him (App. 280a), his objection added up to a claim that the testimony lacked relevancy under Fed.R.Evid. 404(b).[10] The trial judge found it relevant. We do as well.[11]

Rule 404(b) does nothing more than restate what has long been the law of this Circuit, as enunciated pre-Rule, for example, in *United States v. Stirone*, 262 F.2d 571 (3d Cir. 1958), *rev'd on other grounds*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), that "evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." 262 F.2d at 576.

Thus it can be said that the law of this Circuit, pre-Rule 404(b), favored admissibili-

9. The objection, which came after the answer was in, was: "This is objected to. That is not a proper place in this trial." (App. 279a). Long's counsel referred to no federal rule of evidence, raised no hearsay objection, and did not claim that the evidence was unreliable.

10. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

11. Fed.R.Evid. 401 provides what is a very low threshold of relevancy:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Given the advantage an appraisal by hindsight affords, we would have found particular relevancy under Fed.R.Evid. 401 in the light this testimony cast upon Long's state of mind

(i. e., knowledge and wilfulness) when he went into the grand jury room and, when asked (App. 374a): "How long have you been making payoffs or bribes to councilmen of North Braddock in return for the garbage contract that you have?", he responded: "I have never been paying off any bribes to any community that I am doing business with." The Indictment embodies the specific question and answer in Count IV, charging Long with lying to the grand jury.

*See United States v. Kopel*, 552 F.2d 1265 (7th Cir. 1977), where, convicted of extortion and perjury, the appellant argued unsuccessfully to the Court of Appeals that the government improperly introduced transcripts of a grand jury proceeding showing that appellant consulted with his attorney prior to answering the crucial questions which were the subject of the perjury counts. The court concluded, over the dissent of one judge, that evidence showing the consultation tended to prove that Kopel's statements were made in a deliberate fashion rather than as the result of inadvertence and mistake. Citing Rule 403, the court found the evidence to be far more probative than prejudicial.

ty of "other crime" or "bad act" evidence unless it could be said that it was being offered solely to show that a defendant had criminal propensities. Our approach put us with those jurisdictions which favored admissibility of such evidence (the "inclusionary" approach). Other jurisdictions took the opposite position, that such evidence was inadmissible unless it bore indicia of relevance (the "exclusionary" approach). Thus, where one came out depended upon where one went in. *See Stone, The Rule of Exclusion of Similar Fact Evidence: America*, 51 Harv.L.Rev. 988 (1938).

This Circuit's pre-404(b) approach to "other crime" evidence is seen not only in *Stirone, supra,* but also in *United States v. Dansker,* 537 F.2d 40 (3d Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *United States v. Chrzanowski,* 502 F.2d 573 (3d Cir. 1974); and *United States v. Todaro,* 448 F.2d 64 (3d Cir. 1971), cert. denied, 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732 (1972).

▇ The draftsmen of Rule 404(b) intended it to be construed as one of "inclusion," and not "exclusion." They intended to emphasize admissibility of "other crime" evidence. This emerges from the legislative history which saw the "exclusionary" approach of the Supreme Court version of Rule 404(b) modified. Thus the Supreme Court's final formulation, after prohibiting evidence of other crimes to prove the character of the defendant, had provided that "this subdivision does not exclude the evidence when offered for other purposes such as . . . ." The list of exceptions followed. 56 F.R.D. 183, 219 (1972).

As finally adopted by Congress, however, the words are: "It may, however, be admissible for other purposes such as . . . ." The House Committee on the Judiciary explained that this placed "greater emphasis on admissibility than did the final Court version." H.R.Rep.No.650, 93d Cong., 1st

Sess. (1973), *reprinted in* 4 U.S.Code Cong. & Ad.News, pp. 7075, 7081 (1974).

That the Senate Committee on the Judiciary felt the same is shown by its statement that, "with respect to permissible uses for such evidence [i. e., 'other crimes,' etc.], the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time." S.Rep.No.1277, 93d Cong., 2d Sess. (1974), *reprinted in* 4 U.S.Code Cong. & Ad.News, pp. 7051, 7071 (1974).

Given this approach, we have no difficulty in finding the evidence in question of substantial relevance, see 765, n. 11, *supra,* under Rules 404(b) and 401.

The concurring opinion takes the trial judge to task for not engaging in a neat scholarly balancing as required by Fed.R. Evid. 403, and then, doing its own Rule 403 balancing, concludes the evidence should have been barred. As to this, two comments are in order. As the concurrence recognized, Long's counsel never invoked Rule 403, that is, he never stated that, even if the material objected to had probative value, it was "substantially outweighed by the danger of unfair prejudice." Since the "specific" objection requirement of Fed.R. Evid. 103(a) was not complied with, the trial judge was not required to deal with Rule 403. Moreover, the dynamics of trial do not always permit a Rule 403 analysis in the detail the concurrence suggests as appropriate. While a trial judge can be helpful to an appellate court if he spells out for it such an analysis, to require a detailed balancing statement in each and every case is unrealistic. Where an objection does invoke Rule 403, the trial judge should record his balancing analysis to the extent that his exercise of discretion may be fairly reviewed on appeal.[12] However, where Rule 403 is not invoked, the trial judge's balancing will be subsumed in his ruling.

12. The concurrence thus misinterprets our holding. Contrary to the suggestion of the concurrence, we do not "maintain . . . that the trial judge need not set forth the reasons for his action so long as his ruling cannot be

characterized as irrational or arbitrary . . ." (*see* 768, *infra*); nor do we hold "that the trial judge need only state that the admitted material is 'relevant' in order to comply with Rules 403 and 404." (*See* 772, *infra*.)

We turn now to the Rule 403 balancing of the concurrence. If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.

As Judge Weinstein pointed out (1 Weinstein & Berger, *Weinstein's Evidence*, at ¶ 403[01], 403–4), Rule 403, as proposed by the Supreme Court read as follows:

Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.

(a) EXCLUSION MANDATORY. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(b) EXCLUSION DISCRETIONARY. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The same treatise points out that under subdivision (a) of the original formulation, the judge, under certain conditions, had to exclude the evidence, whereas under subdivision (b) exclusion rested upon exercise of the court's discretion. *Id.* at ¶ 403[02], 403–12.

In view of the revision made by Congress, and the use of "may" in the final version of Rule 403, it is manifest that the draftsmen intended that the trial judge be given a very substantial discretion in "balancing" probative value on the one hand and "unfair prejudice" on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise because of a differing view of the highly subjective factors of (a) the probative value, or (b) the prejudice presented by the evidence. This inference is strengthened by the fact that the Rule does not establish a mere imbalance as the standard, but rather requires that evidence "may" be barred only if its probative value is "substantially outweighed" by prejudice. The trial judge, not the appellate judge, is in the best position to assess the extent of the prejudice caused a party by a piece of evidence. The appellate judge works with a cold record, whereas the trial judge is there in the courtroom.

A reversal based upon appellate disagreement with the trial judge's balancing under Rule 403 necessarily must be founded upon highly subjective reasons, which, experience teaches us, are not always readily recognizable or definable. The dangers inherent in not understanding this are exemplified in the recently decided *United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977) (*en banc*), affirming a conviction, and vacating the previous panel decision, 544 F.2d 611, which had reversed the conviction.

The *en banc* court discussed the question of "what standard of review is to be applied" to Rule 403 rulings of a trial judge. The vacated panel decision had found the admission of certain evidence to be error and grounds for reversal because its probative value was, in the words of Rule 403, "substantially outweighed by the danger of unfair prejudice." The full court took a different view, aided in so doing by the standard of review it adopted, namely, that the trial judge will be upheld "unless he acts arbitrarily or irrationally." 560 F.2d at 515. Cited in support of this view is *Construction Ltd. v. Brooks-Skinner Building Co.*, 488 F.2d 427, 431 (3d Cir. 1973).[13]

---

**13.** Thus this Court in *Construction, Ltd.* stated:

The task of assessing potential prejudice is one for which the trial judge, considering his familiarity with the full array of evidence in a case, is particularly suited. . . . The practical problems inherent in this balancing of intangibles—of probative worth against the danger of prejudice or confusion—call for the vesting of a generous measure of discretion in the trial judge. Were we sitting as a trial judge in this case, we might well have concluded that the potentially prejudicial nature of the evidence . . . outweighed its probative worth. However, we cannot say that the trial judge abused his discretion in reaching the contrary conclusion.

This was, of course, a pre-Rules case. Rule 403 did not change the old and well-known "prejudice" rule under which *Construction, Ltd.* was

■ Because the trial judge here did not abuse his discretion in admitting the evidence in question, and for the further reason that, even if he did, the evidence of appellant's guilt is so overwhelming that the alleged error did not affect a "substantial right," Long's judgment of conviction will be affirmed.

ADAMS, Circuit Judge, concurs.

ADAMS, Circuit Judge, concurring.

### 1.

I concur in the result reached by the majority. However, my concern regarding an important and recurring issue in the administration of criminal justice prompts me to set forth my views separately.

My difference with the majority stems from a divergence of perspectives on the process by which a trial court must evaluate attempts to admit concededly prejudicial evidence of prior misdeeds against a defendant in a criminal case. Because of the expansive scope of the threshold concept of "relevance" under the Federal Rules of Evidence [1] the trial judge's duty to balance the probative value of proffered evidence against its potential for prejudice is an essential safeguard to the fairness of criminal trials.[2] In performing that duty under the Federal Rules of Evidence, I believe the trial judge must articulate his weighing of those two factors. To maintain, as the majority appears to suggest, that the trial judge need not set forth the reasons for his action so long as his ruling cannot be characterized as irrational or arbitrary is not deference to the admitted discretion of the trial court, but a refusal to assure that such discretion is in fact exercised.

### 2.

From the evidence produced at trial it would appear that Francis Long, the appellant here, was involved in a scheme to obtain garbage collection contracts for his company from a number of boroughs in the western part of Pennsylvania by offering kick-backs to councilmen in such boroughs. There is also evidence that when pay-offs in the Borough of North Braddock became the subject of a grand jury investigation, Long and his associate, John Hackett, attempted to fabricate a story that would explain, in non-criminal terms, their payments to the councilmen.

It was this latter aspect of their conduct which gave rise to the specific charges leading to this appeal. Long and Hackett were not indicted for bribing borough councilmen, but for lying before and conspiring to mislead a grand jury that was investigating the alleged bribery. More particularly, Long was charged with falsely denying before a grand jury his bribery of a North Braddock official. Additionally, the indictment charged Long with conspiring to "corruptly influence" a grand jury witness, and conspiring to suborn perjury in an effort to cover up his alleged bribery.

The FBI conducted its investigation by persuading Irvin, a North Braddock Borough councilman, to wear a body recorder while meeting with Long and Hackett. As a result of the information secured in this manner by the recorder, the evidence of Hackett's participation in the bribery, obstruction of justice, and conspiracy was overwhelming. Hackett's own recorded comments went far in establishing his guilt, and he was convicted.

The evidence against Long, however, was less convincing, for no damaging admissions out of his own mouth were captured on tape. Indeed, this must have been the perception of the prosecution, because in Long's trial for lying to the grand jury the prosecutor sought to elicit from Irvin, the

---

decided, nor has it changed the standard we applied in *Construction, Ltd.*

**1.** F.R.Evid. 401 reads:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or; less

probable than it would be without the evidence.

**2.** F.R.Evid. 403. The Advisory Committee's Note to Rule 401 states that the broad sweep of Rule 401 is to be "limited by the exclusionary principles of Rule 403."

informant, a statement that Long had told Irvin of on-going bribery efforts in four surrounding boroughs.[3]

Long's counsel objected to this testimony on the ground that "[evidence of] prior bad acts . . . is not admissible in a trial of a defendant." (280a) In the course of his objection, however, Long's counsel did not specifically mention either Rule 404(b) or Rule 403 by number.

The trial judge overruled the objection on the basis that the evidence was relevant to establish "a common scheme" (281a), and to prove that Long "knows what a payoff or kickback is." (282a) He did not, however, weigh the relevancy against the prejudice that such evidence might engender in the minds of the jury.

### 3.

To determine whether the ruling by the trial judge in admitting this evidence constituted reversible error, my analysis begins with the precepts embodied in Federal Rule of Evidence 404(b).[4] That rule provides that testimony regarding other wrongs may not be used to show a propensity to perpetrate the wrongs at issue, and that an accused should not be subject to conviction on the basis of crimes with which he is not charged.[5] Closely associated with such salutary principles is the proposition that even when introduced for another relevant purpose, evidence of other criminal misconduct will frequently carry with it a danger that the jury will draw the forbidden inference that a person who has committed criminal acts once, is likely to do so again.

Potential for prejudice was especially great in the case at hand. One of the offenses charged is not a substantive crime, itself, but a conspiracy to commit a substantive crime, namely, obstructing justice by misleading a grand jury about still another substantive crime, bribery. Evidence of yet a third crime—another effort at bribery similar to the crime allegedly concealed—may well cause, indeed invite, the jury to focus attention on the defendant's culpability for "bribery" in general. This is so for it is the defendant's proclivities to bribe—not the specific crimes of perjury and obstructing justice presently before the jury—to which the evidence in question is most directly relevant. To admit testimony regarding other alleged bribes might well encourage the outcome which Rule 404(b) seeks to avoid: conviction on the basis of "guilt by reputation." [6]

There is no doubt that the Federal Rules of Evidence were not designed to deprive the trial courts of their discretion. Such discretion is most important, because a trial judge is in an advantageous position to ascertain the climate of the trial and to appraise the impact of the prejudicial material. Nonetheless, the safeguard provided by the Federal Rules against prejudicial use of evidence is established by requiring a balancing of the probative value of the tendered material, on the one hand, and its potential for prejudice, on the other, before determining whether it is appropriate to allow it to be submitted to the jury.[7] In

---

**3.** The testimony proffered was that Long had said to Irvin that Long "was still paying off in Duquesne, Munhall, Homestead, and Rankin." While this indirect testimony is not objectionable "hearsay" within the meaning of the Federal Rules of Evidence, since Long is a party to the proceeding (F.R.Evid. 801(d)(2)), it nonetheless carries with it a number of the factors which militate against placing reliance upon hearsay.

**4.** Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**5.** See e. g., United States v. Cook, 538 F.2d 1000, 1003–1004 (3d Cir. 1976); United States v. James, 181 U.S.App.D.C. 55, 555 F.2d 992, 1000–1001 (1977); United States v. Beechum, 555 F.2d 487, 507–509 (5th Cir. 1977).

**6.** See e. g. United States v. Cook, 538 F.2d 1000, 1004 (3d Cir. 1976); quoting Govt. of the Virgin Islands v. Toto, 529 F.2d 278, 283 (3d Cir. 1976).

**7.** Federal Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially out-

this regard, we recently stated: [8]

> Because the weighing entails competing interests, it is delicate and must be employed with care, lest accommodation to the prosecutor's needs result in subverting a principle that is central to our concept of fairness.

I am somewhat troubled because the protection which Rule 403 attempts to establish may have been disregarded in the case before us. Since no balancing took place, at least none which is set forth on the record, it is difficult to determine whether there has been an exercise of discretion or a mistake.

The explicit weighing which Rule 403 mandates need not, of course, be as extensively articulated as the balancing in which this concurring opinion engages. Evidentiary decisions most often are made in the course of a trial, and extensive explication might unduly delay the proceedings. Nonetheless, the record should reflect some reckoning of the balance between relevance and prejudice and the alternatives available for the substitution of less prejudicial proof.

Such reasoned adjudication is the cornerstone of the legitimacy of the actions of the judiciary, and an essential safeguard of the proper exercise of the trial court's broad discretion.[9]

### 4.

Evidence that Long engaged in other bribery schemes—in this case evidence of hearsay quality—was of limited relevance to the specific issues before the jury. Certainly this is true if our inquiry is limited to the reasons addressed by the trial court. The district judge declared that he admitted the evidence to "show part of the general plan or scheme."[10] Apparently he believed that the allegation that Long may have sought to bribe other borough councils was relevant to the issue being tried. Yet, as the trial judge recognized, the case being tried "ha[d] to do with obstruction of justice and perjury before the grand jury,"[11] not bribery in Duquesne, Munhall, Homestead and Rankin. Any conclusion that the "payoffs" referred to in the challenged testimony were part of a common scheme to commit perjury before the grand jury or to

---

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

The Advisory Committee's Notes to Rule 404(b) state that where the evidence of prior bad·acts is offered for a permissible purpose, "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under Rule 403."

See *Govt. of the Virgin Islands v. Felix,* 569 F.2d 1234 at 1279–1280 (3d Cir. 1978); *John McShain, Inc. v. Cessna Aircraft Co.,* 563 F.2d 632 at 635 (3d Cir. 1977); *United States v. Cook,* 538 F.2d 1000, 1003–04 (3d Cir. 1976); *United States v. Robinson,* 174 U.S.App.D.C. 224, 530 F.2d 1076, 1081 (1976).

Even before the Federal Rules, the standard in this Circuit was phrased in these terms:

Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.

Of course, the trial judge may, in the exercise of his sound discretion exclude evidence which is logically relevant to an issue other

than propensity, if he finds that the probative value of such evidence is substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice.

*United States v. Stirone,* 262 F.2d 571, 576 (3d Cir. 1958) *revd on other grounds* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

**8.** *United States v. Cook,* 538 F.2d 1000, 1004 (3d Cir. 1976). *See Govt. of the Virgin Islands v. Felix,* 569 F.2d 1274 at 1279–1280 (3d Cir. 1978).

**9.** As Justice Frankfurter stated in a different context:

That a conclusion satisfies one's private conscience does not attest to its reliability. The validity and moral authority of a conclusion largely depend on the mode by which it was reached.

*Joint Anti Facist Refugee Committee v. McGrath,* 341 U.S. 123, 171, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

**10.** 281a.

**11.** *Id.*

obstruct that body's inquiry would appear to be speculative.[12]

The trial judge also suggested[13] that the objectionable evidence rebutted an implication planted during the cross-examination of a prior witness[14] to the effect that Long's denial of "payoffs" might have been confused by a misapprehension as to the meaning of that term. However, the possibility of Long's confusion regarding the meaning of the word "payoffs" would not appear to be negatived by the testimony in question here: that Long had said that he was "paying off" other city councils. Long may have been equally confused in making the latter utterance.

Even if a reviewing court is not limited to the reasoning articulated by the trial judge, the probative value of the questioned testimony remains marginal. The prosecution's terse invocation of the purpose of showing "intent, motive and knowledge"[15] as the basis for the relevancy of the testimony guides attention only to minimal probative worth. Taking the facts to be as the prosecution represented them, Long might be said to have had a motive for concealing his misdeeds in North Braddock from the grand jury: i. e., avoiding prosecution for his misconduct in North Braddock. But the fact that Long may also have hidden other misconduct, even if proven, adds little to the prosecution's case as to Long's motive for lying to the grand jury. Similarly, it seems that Long's knowledge and intent regarding his statements to the grand jury on the subject of his actions in North Braddock were illumined only to a limited extent by his alleged comments to Irvin, the informer, about activities in four surrounding boroughs.

Concern that potential prejudice substantially outweighed any probative value is heightened by the use that the government ultimately made of the testimony at issue. Thus, in his closing, the prosecutor did not refer to the prejudicial evidence as it bore on intent, motive or any of the other grounds set forth when the prosecution urged the inclusion of the testimony. Instead, the prosecutor invited the jurors to consider the evidence in question primarily as it touched on Long's character.[16] The defendant was to be convicted, according to the prosecutor, because his activities in Duquesne, Munhall, Homestead and Rankin were socially pernicious. The judge's charge did not remedy this state of affairs, for it left unclear the purposes for which the jury could consider the testimony.[17]

---

12. *Cf. United States v. Klein,* 515 F.2d 751, 755–56 (3d Cir. 1975).

13. 282a.

14. *Id.* at 160a–162a.

15. Appendix p. 281a.

16. The prosecutor's comments were:

Now, what did Mr. Long say to Norm Irvin at lunch? What do you recall about that testimony? Mr. Irvin, as I recall it, said the defendant, Long told him at lunch, I am still paying, still paying; Rankin, Munhall, Duquesne and Homestead. I am paying there. Does that mean that he is still paying there but he is not paying in North Braddock because the heat is on? That is something for you to think about.

\* \* \* \* \* \*

Mr. Cindrich talked about presumption of innocence. Mr. Wedner talked about presumption of innocence. Mr. Cindrich talked about a reasonable doubt. Mr. Wedner talked about a reasonable doubt. But, you must follow the law given to you by the Court.

But, there are other foundations and other pillars upon which our country is built and one of those is a government of the people, by the people, for the people. Not in the back rooms at Long Hauling Company and other—under the table to the Council of North Braddock and how many other garbage contracts Mr. Long has bought that way.

17. The jury charge on this point reads:

THE COURT: Now, there is a principle of law that says that you may consider like acts or a pattern of activity to prove specific intent. The willful, intentional or deliberate value of the acts charged.

That is, which are not concerned here with—let me put it the other way. We are concerned here with whether or not there were payoffs, kickbacks or bribes. As far as North Braddock is concerned. You may look to any other statements such as Rankin, Munhall, anything of that kind, if you first find that the statements were made.

You may look to them to determine whether there was a pattern of activity to prove the specific intent about which we are talking.

It is difficult to discern clearly the principle for which the majority contends.[18] The thrust of their comments seems to be that the trial judge need only state that the admitted material is "relevant" in order to comply with Rules 403 and 404. Such a procedure, in my view, is not the one contemplated by the Federal Rules or our cases.

### 5.

But although I believe that, where the prosecution seeks to introduce potentially prejudicial evidence, Rule 403 and the cases require the trial court to balance probative value against prejudice, the judgment here need not be reversed.

The evidence of guilt in this particular case is so substantial that the legal error may be considered harmless.[19]

---

We are not concerned in this case with any questions with respect to Munhall or any other place than North Braddock because these questions were solely related at that point and that is solely the charge in this indictment. But, you can look to those other matters to determine whether or not there was a conspiracy to answer the questions as charged in the indictment.

18. The majority suggests that we are "taking the trial judge to task." To the contrary, the sole purpose of this discussion is to point out the necessity of careful balancing in order to avoid the improper use of other alleged misconduct to obtain a conviction on a charge based on an unrelated transgression.

19. See Govt. of Virgin Islands v. Toto, 529 F.2d 278, 283–84 (3d Cir. 1976) (test for harmless error is whether it is highly probable that evidentiary error did not contribute to conviction); Federal Rule of Criminal Procedure 52(a) (harmless error is one that does not affect substantial rights).