786 F.2d 1167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
LELAND JOHN MOSIMAN, Defendant-Appellant.
 85-1181
 United States Court of Appeals, Sixth Circuit.
 2/25/86
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: CONTIE and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals his jury convictions of receipt of a firearm by a felon in violation of 18 U.S.C. Secs. 922(h)(1) and 924(a) and possession of an unregistered firearm in violation of 26 U.S.C. Sec. 5861(d). For the reasons that follow, we affirm.
 
 I.
 
 2
 In July of 1984, defendant was released to a halfway house in Detroit, Michigan, from FCI Milan where he had been serving a term of imprisonment for extortion. While staying in the halfway house, defendant contacted a former cellmate from FCI Milan, William Norris, and applied for a job in Norris' construction business. Norris gave defendant a job.
 
 
 3
 Approximately a week and a half after defendant began working for Norris, he asked Norris whether Norris could get him a gun and a silencer. (Silencers are included within the definition of firearm. 26 U.S.C. Sec. 5845.) Defendant later explained to Norris that he wanted the firearms in order to murder two people so that he could take photographs and send the photographs to a prominent businessman, Michael Illich, in order to extort $1,000,000 from him.
 
 
 4
 One day in early September, 1984, defendant did not come to work. The following day, when he returned to work, defendant explained to Norris that he had been absent in order to contact an individual who could supply a gun and silencer. Defendant also told Norris that he had determined who his intended victims were and had talked with them about selling their home. Later, Norris contacted FBI Agent Edward R. Hullinger in Oakland County, Michigan, and explained defendant's plot.
 
 
 5
 During his investigation, Agent Hullinger placed a recording device on Norris on two occasions. The first of two recordings was made on September 4, 1984. On that day, defendant asked Norris to drive him out to the intended 'murder victims" home, which Norris agreed to do. During the car ride, defendant told Norris more about his murder and extortion plot and inquired about Norris' acquisition of the gun and silencer. Norris and defendant also set a time and place for the delivery of the firearms.
 
 
 6
 The second recording was made on Friday, September 7, 1984, the date of the planned delivery of the firearms. The meeting occurred at a predetermined location known as 'Truck City.' After meeting with defendant, Norris gave defendant his truck keys and told defendant what kind of gun he was delivering and where the gun and silencer were. Defendant then left and went to Norris' truck. After defendant removed the gun and another item from the truck, two FBI agents arrested him.
 
 
 7
 On October 4, 1984, a federal grand jury returned a three-count indictment against defendant. In Count One the grand jury charged a violation of 18 U.S.C. Secs. 922(h)(1) and 924(a), knowing receipt of a firearm by a felon. In Count Two the grand jury charged a violation of 26 U.S.C. Secs. 5861 and 5871, possession of an unregistered firearm. In Count Three the grand jury charged receipt and possession of an unregistered firearm in violation of 26 U.S.C. Secs. 5861(d) and 5871. Prior to trial, the government's motion to dismiss Count Three was granted.
 
 
 8
 Defendant's position at trial was that he did not know that he was obtaining firearms. To support this, defendant testified that he had concocted a phony extortion scheme in order to trick Norris into giving him $1,200 because his wife told him something about Norris that made him 'hate' Norris. Following the jury trial, on November 29, 1984, defendant was found guilty of Count One and Count Two. On February 19, 1985, defendant was sentenced to a five-year term of imprisonment on each count, to run concurrently with each other and with any unexpired sentence that defendant was then serving.
 
 II.
 
 9
 On appeal defendant argues that (1) the district court abused its discretion under Rule 403 of the Federal Rules of Evidence in permitting evidence of the murder and extortion plot, (2) he was denied a fair trial because an FBI agent testified to his belief in defendant's plan to execute the extortion and murder plot and also belief in the government's informant, (3) the trial court erred when it denied defendant's requested jury instruction regarding the weight to be given law enforcement officers' testimony, and (4) he was denied a fair trial when the district court limited his testimony regarding the motivation for his actions relative to the murder and extortion plot.
 
 A. Evidence of Murder and Extortion Plot
 
 10
 At trial the government introduced portions of the taped conversations between defendant and the government informant. Defendant argues that evidence of the extortion and murder plot should have been excluded. Defendant's argument here is based, as it was before the trial court, on Rule 403 of the Federal Rules of Evidence. Rule 403 provides that relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ..' (emphasis supplied). On appeal 'great deference to the district court's weighing is appropriate. As noted by the Third Circuit, '[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." United States v. Metzger, No. 84-5804, slip op. at 17 (6th Cir. Dec. 13, 1985) (quoting United States v. Long, 574 F.2d 761, 767 (3d Cir.), cert. denied, 439 U.S. 985 (1978)).
 
 
 11
 Defendant argues that 'the evidence of this multiple murder and extortion plot involving a famous individual obviously prejudiced the defendant's case.' Brief for Appellant at 6. Although we agree, our inquiry does not end there. Rather, we must determine whether the evidence unfairly prejudiced defendant and, if so, whether the unfair prejudice substantially outweighed the probative value. Unfair prejudice means an 'undue tendency to suggest decision on an improper basis . . ..' Fed. R. Evid. 403 advisory committee note.
 
 
 12
 Defendant seems to argue that the unfair prejudice can be found in the tendency of the jury to base its decision on defendant's involvement in an extortion and murder plot rather than the offenses charged. Assuming that some unfair prejudice could result from this evidence, we turn to the next step in the analysis.
 
 
 13
 In the first count of the indictment the grand jury charged that defendant 'did knowingly receive a firearm, . . . in violation of [18 U.S.C. Sec. 922(h)(1)].' As noted above, defendant was arrested moments after he removed the firearms from the informant's truck. As was pointed out during oral argument and as might be expected on these facts, defendant used as a defense a lack of knowledge that he was receiving a firearm. The evidence showing that defendant had planned extensively for receipt of the firearms, and for their subsequent use, is, of course, highly probative of whether he knew he was receiving a firearm. Thus, the evidence at issue was of great importance to the government's case and any potential unfair prejudice clearly does not substantially outweigh the probative value.
 
 
 14
 B. Testimony by FBI Special Agent Hullinger
 
 
 15
 Defendant argues that he was denied a fair trial as a result of a portion of Special Agent Hullinger's testimony on direct examination. Specifically, defendant focuses on the emphasized material in the following exchange:
 
 
 16
 Q. And did you listen to them?
 
 
 17
 A. Yes, I listened to them.
 
 
 18
 Q. And when did you do that?
 
 
 19
 A. I did that on September 5th.
 
 
 20
 Q. And what was your state of mind after listening to them?
 
 
 21
 A. I felt that what Mr. Norris had told me previously had been confirmed by the conversation that was recorded there. And I really started to believe the whole situation.
 
 
 22
 Brief for Appellant at 10. (Quoting App. at 40-41) (Emphasis by defendant). It is defendant's position that this testimony amounted to 'impermissible vouching for a witness.' To support his position, defendant cites numerous prosecutorial misconduct cases.
 
 
 23
 Although courts have long held that 'it is improper for a prosecuting attorney in a criminal case to state his personal opinion concerning the credibility of a witness or the guilt of a defendant,' United States v. Daniels, 528 F.2d 705, 709 (6th Cir. 975), we know of no authority which extends this principle to statements made by government witnesses. Moreover, assuming Special Agent Hullinger's statement was to be accorded the same force and effect as a prosecutor's statement, the comment in the instant case would not lead to reversal. The Supreme Court recently noted that 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.' United States v. Young, 470 U.S. ----, ----, 105 S.Ct. 1038, 1044 (1985). Viewed in context, the isolated testimony emphasized by defendant could not have affected the fairness of the trial.
 
 
 24
 Similarly, we disagree with the characterization of the questioned testimony as 'vouching.' Viewed in context, it is clear that Special Agent Hullinger was not vouching for Norris, but rather he was explaining what investigative steps he had taken. Accordingly, we reject defendant's contention that he was denied a fair trial.
 
 C. Jury Instructions
 
 25
 Defendant's third argument is that the district court erred in failing to give the following jury instruction:
 
 
 26
 The testimony of a law enforcement officer is entitled to no greater weight than that of other witnesses simply because he is a law enforcement officer.
 
 
 27
 Defendant's argument here is made in conjunction with the argument discussed in section B. above. Defendant asserts that 'Special Agent Hullinger's questioned remarks, [quoted in section B. above], carried with them the prestige and weight of his agency. Under such circumstances, the requested jury instruction was necessary.' Brief for Appellant at 14. However, since we reject defendant's characterization of those remarks as vouching, defendant's argument here fails as well. Moreover, even if we were not so inclined, the decision on whether to give such an instruction is within the discretion of the trial court, see, e.g., Golliher v. United States, 362 F.2d 594, 604 (8th Cir. 1966), and the trial court certainly did not abuse its discretion in the instant case.
 
 D. Limitation on Defendant's Testimony
 
 28
 At trial defendant took the stand and testified that he did not intend to go through with the extortion and murder plot. Defendant testified that he had concocted the entire plot in order to trick Norris into giving him $1,200 to 'finance' the 'crime.' On appeal defendant argues that this defense raised the question of what motivated him to try to run this scam on Norris. In order to answer this question, defendant made the following offer of proof at trial:
 
 
 29
 I would expect Mr. Mosiman to tell me that his wife, on that weekend, advised him that when Bill Norris had given her the money for her to move from Whitmore Lake--or before he would give her money to move from Whitmore Lake to Saline, he demanded that she perform an act of sex with him, and that she did that.
 
 
 30
 Brief for Appellant at 15 (quoting App. at 167). The district court excluded this evidence due to a lack of relevance and on hearsay grounds.
 
 
 31
 Whether defendant actually intended to go through with the murder and extortion plot was not relevant to the case. As defendant has repeatedly pointed out in his brief, he was not on trial for extortion or murder. Similarly, defendant was not on trial for conspiracy to extort or murder. What is relevant is that he presented the plot to Norris, and the plot included the plan to receive firearms. This, as noted in section A., supra, was highly probative on the issue of whether he knew he was receiving a firearm. Since evidence of whether defendant intended to go through with the murder and extortion plot was not relevant, evidence that he was trying to 'rip off' Norris or, more importantly, what motivated him to 'rip off' Norris, was not relevant.
 
 III.
 
 32
 In accordance with the foregoing, we AFFIRM the district court on all issues.