## UNITED STATES v. CURZIO.
### No. 10008.

United States Court of Appeals
Third Circuit.

Argued Nov. 25, 1949.

Decided Jan. 16, 1950.

See also 170 F.2d 354.

John M. Smith, Jr., Philadelphia, Pa., for appellant.

Walter A. Gay, Jr., Philadelphia, Pa. (Gerald A. Gleeson, United States Attorney, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

**McLAUGHLIN, Circuit Judge.**

Appellant was convicted below for possession of and attempting to utter counterfeit ration coupons.

The sole ground urged for reversal arises out of an incident occurring early in the trial. Emmons, a government witness, had testified on direct examination that on July 20, 1945, he had observed appellant proceeding toward the house where the coupons were later seized. On cross examination, the witness was queried regarding his certainty of the July 20th date. Next, he was asked: "Had you ever seen the defendant prior to July 20, 1945?" Emmons started to answer, saying, "His police photograph—". At that point he was stopped by the objection of appellant's attorney. The attorney then moved for the withdrawal of a juror saying that the answer "wasn't responsive, and it was a deliberate attempt by the witness to insinuate something in this case which should not be there." The Trial Judge in denying the motion said:

"I doubt if it was deliberate.

"Mr. Emmons, you should have answered the question directly as to whether or not you have ever seen the defendant before, so far as you know.

"Now, ladies and gentlemen, the witness started to say something there, the full effect of which I did not get, but it was not responsive to the question, and whatever it was, as you heard it, I not only urge you, but I direct you and I earnestly urge you to brush it from your minds, because it has nothing to do with this case."

Later, in the charge, which is a model of fairness, the Trial Judge again referred to the matter because, as he mentioned, he thought it best to clear it up in the jurors' minds. He said: "You will recall that one of the witnesses for the Government, in the early stages of the case, when he had been asked if he had ever seen or known the defendant here before, made some reference to having seen a police photograph. I told you at that time to disregard that testimony completely, and I hope you did. We are trying the case here on the evidence here in this courtroom and not on anything else, and there is no evidence in this case that Mr. Curzio has a police record or that he has ever been convicted of any crime before, so wipe that out of your minds completely."

Our own examination of the record reveals no indication that the District Judge abused his discretion in denying the motion for a mistrial. He acted immediately, affirmatively and without fuss in disposing of what was, under the circumstances, a minor problem. He had seen and heard the entire episode. He was not impressed with the contention that the witness had deliberately tried to inject improper testimony into the trial. Taking no chances on the jurors overlooking his early direction, the Court again carefully and tactfully covered the happening in his charge. This resulted in the jurors not only having the true status of the stricken testimony freshly and forcibly given to them at the close of the case, but such presentation was strengthened by being a part of a charge that dovetailed into it.

The charge opened with a statement that the defendant was presumed to be innocent. It went on to say that, "When the charge of commission of a crime is made against a person, the burden is upon the Government to prove that crime beyond a reasonable doubt and to prove its commission by the particular person that is charged." It was

explained that the indictment was not evidence of the commission of the crime and the presumption of innocent rule was reiterated. Reasonable doubt was well defined. The Court said among other things that " * * * people ought not to be convicted on mere suspicion or on the possibility that they are guilty, and the evidence, in order to justify a conviction, should be such that, when you have calmly and carefully considered it, you can say to yourselves that there is no reasonable question in your mind of the guilt of the defendant." After discussion of the content of the indictment and advising the jury that they were the sole judges of the credibility of the witnesses and of the weight to be given to the testimony, the Court charged as above quoted regarding the Emmons testimony. He recalled to the jury that he had instructed them to disregard that evidence. He told the jury that the case was being tried on the evidence presented in the courtroom and that there was no evidence that Curzio had a police record or that he had ever been previously convicted of crime, " * * * so", he said, "wipe that out of your minds completely." If anything further were needed, the charge forthrightly and effectively eliminated the objectionable testimony from the case. The conviction, we think, was brought about by the ample and persuasive evidence of his guilt which the transcript reveals. Cf. Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314.

The decision in Marsh v. United States, 3 Cir., 82 F.2d 703, 704, presents a comparable situation. There, a government witness, on direct examination, read a statement which contained a reference to the alleged connection of the appellant with a notorious murder unrelated to the case on trial. The Court stated, "It appears that this statement was not willfully and intentionally elicited by the prosecuting attorney, but was read inadvertently by the witness as part of the statement as a whole. The court admonished the jury to eliminate from their consideration of the case any and all references to the prior and unconnected offense." And, held the Court,

in affirming the conviction, "We are not convinced that the casual reference to the prior crime, in view of the instructions of the trial judge, is ground for reversal."

The judgment of conviction will be affirmed.