UNITED STATES of America, Plaintiff,

v.

Pedro DOAMAREL, Defendant.

Crim. A. No. 82–19.

United States District Court,
D. Delaware.

June 30, 1983.

Joseph J. Farnan, Jr., U.S. Atty., and Theopalis K. Gregory, Asst. U.S. Atty., Wilmington, Del., for plaintiff.

Robert B. Mozenter, and Michael S. Durst, Mozenter, Goldberg & Durst, Philadelphia, Pa., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Defendant, Pedro Doamarel, has timely moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c)[1] and for a new trial pursuant to Fed.R.Crim.P. 33.[2] Defendant claims that the evidence adduced at trial was insufficient to support the jury's finding of guilt on the third count of the superceding indictment, conspiracy to manufacture phelyl-2-propanone ("P–2–P"). In addition, defendant asserts that he was denied a fair trial as a result of a witness's testimony alluding to the defendant's previously withdrawn plea of guilty to one of the three charges for which the defendant was on trial.

1. Rule 29(c) provides:

(c) Motion After Discharge of Jury. If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If the verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

2. Rule 33 provides:

Rule 33. New Trial

The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

## Procedural History

On May 19, 1982, the defendant and a co-defendant, Tyrone Smith, were indicted on three counts—conspiracy to manufacture methamphetamine (Count I); conspiracy to manufacture amphetamine (Count II); and conspiracy to manufacture P–2–P (Count III)—in violation of 21 U.S.C. §§ 841(a)(1) and 846.[3] (Doc. 1). On August 16, 1982, the defendant and Smith agreed to and did plead guilty to Count I—conspiracy to manufacture methamphetamine. (Docs. 22 & 23). Pursuant to the plea agreements, the remaining two conspiracy counts, Counts II and III, were to be dismissed at sentencing. On December 21, 1982, the defendant was allowed to withdraw his guilty plea as a result of an erroneous instruction given to him regarding sentencing at the time his plea was entered. (Doc. 39). The defendant was then reindicted on the same charges (Doc. 40) and pled not guilty to all three counts. Co-defendant Smith was sentenced and subsequently incarcerated. On February 16, 1982, following a five-day jury trial, the defendant was found guilty of conspiracy to manufacture P–2–P and not guilty of conspiracy to manufacture methamphetamine and amphetamine.

## Motion for a Judgment of Acquittal—Rule 29(c)

■ In passing on a Rule 29(c) post-trial motion for a judgment of acquittal, a district court is required to view the evidence before the jury when it returned a verdict of guilty in a light most favorable to the government and determine whether there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt. *Government of the Virgin Islands v. Bradshaw,* 569 F.2d 777, 779 (3d Cir.), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3070, 57 L.Ed.2d 1121 (1978); *see Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *United States v. Brandon,* 633 F.2d 773, 780 (9th Cir.1980).

The defendant challenges the sufficiency of the evidence to support the jury's verdict of guilty as to Count III, conspiracy to manufacture P–2–P, on two grounds: the credibility of the government's principal witness, Ronald Simmons, and the lack of evidence linking the defendant to any conspiracy to manufacture P–2–P. The government answers that questions of credibility are solely for the jury to determine and that participation in a conspiracy can be established beyond a reasonable doubt by circumstantial as well as direct evidence.

### a. Credibility of Ronald Simmons

The defendant contends that a reasonable jury could not have found the testimony of Simmons credible. The defendant supports this allegation on the grounds that the government obtained Simmons's cooperation by making various favorable agreements with him in exchange for his testimony. The defendant also challenges as incredible Simmons's testimony that he agreed to manufacture P–2–P in order to settle a debt with the defendant who Simmons claims threatened him if he would not cooperate by manufacturing P–2–P. (Doc. 74 at A12–15).

The defendant correctly states that Simmons was testifying pursuant to a plea agreement with the State of Delaware (Government's Exhibit ("GX") 98) where he agreed to plead guilty to one drug conspiracy charge, unrelated to the charges against the defendant, in exchange for the dismissal of the five other drug charges and his appearance as a witness in this case. (Doc. 74 at A4–5; Doc. 75 at B87–88; Doc. 76 at BB45). Evidence was also adduced at trial that Simmons's testimony in this case might be considered at sentencing on the one state charge. The State would recommend that Simmons be sentenced to the time already served prior to sentencing. (Doc. 74 at A5; Doc. 75 at 89–90). In addition, Simmons received a promise from the Drug Enforcement Administration (the "DEA") that they would try to assist him in some unspecified manner in dealing with drug charges pending in Maryland. (Doc. 74, A7–8; Doc. 75

**3.** 21 U.S.C. § 846 makes it illegal to conspire to manufacture a controlled substance, the manu-facture of which is a violation of 21 U.S.C. § 841(a)(1).

at B88; Doc. 76 at BB45–46). Finally, evidence was adduced at trial indicating that Simmons was promised that he would not be required to testify against his girlfriend and others who were under indictment in Delaware on drug charges. (Doc. 74 at A5; Doc. 77 at C24–27).

In *Burks v. United States,* 437 U.S. at 16, 98 S.Ct. at 2150, the Supreme Court stated that a "trial court, which has heard the testimony of witnesses first hand, is not to . . . assess the credibility of witnesses when it judges the merits of a motion for acquittal." *See United States v. Jannotti,* 673 F.2d 578, 598 (3d Cir.) (en banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Bocra,* 623 F.2d 281, 289 (3d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *United States v. Bazzano,* 570 F.2d 1120, 1127 (3d Cir.1977), *cert. denied sub nom., Matz v. United States,* 436 U.S. 917, 98 S.Ct. 2262, 56 L.Ed.2d 757 (1978). This prohibition is especially true where the defendant has had an opportunity to cross-examine the witness and the jury has been properly instructed as to its role in assessing the credibility of witnesses. *See Hoffa v. United States,* 385 U.S. 293, 311–12, 87 S.Ct. 408, 418–19, 17 L.Ed.2d 374 (1966); *United States v. Blasco,* 581 F.2d 681, 684–85 (7th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *United States v. Bazzano,* 570 F.2d at 1127.

■ In the present case, there is no reason for this Court to depart from clear precedent and assess the credibility of Simmons. Even though Simmons was testifying as an accomplice and pursuànt to a plea agreement and other inducements, his testimony was not incredible on its face and thus cannot be said to be incredible as a matter of law. *See Hoffa v. United States,* 385 U.S. at 311–12, 87 S.Ct. at 418–19; *United States v. Cravero,* 530 F.2d 666, 671 (5th Cir.1976).[4] In addition, the defendant thoroughly cross-examined the witness.[5] Finally, the jury was properly instructed as to its role in generally assessing the credibility of witnesses[6] and specifically in assessing the credibility of Simmons.[7]

---

**4.** In *United States v. Doamarel,* Cr. No. 82–19, memo. op. at 4 (D.Del. Jan. 26, 1982), this Court found that Simmons' plea agreement did not render his testimony inadmissible.

**5.** Doc. 75 at B87–114; Doc. 76 at BB1–42, BB47–51.

**6.** At trial, the jury was instructed as follows:

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness's ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

All evidence of a witness where self-interest is shown from either benefits received, detriments suffered, threats or promises made, or any attitude of the witness which might tend to prompt testimony either favorable or unfavorable to the accused should be considered with caution and weighed with care. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.

**7.** At trial, the jury was instructed as follows:

An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. Two witnesses, Ronald Simmons and Tyrone Smith, are alleged to be accomplices of the defendant in this case. An alleged accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an alleged accomplice may be received in evidence and considered by the jury in decid-

*Sufficiency of the Evidence*

Having determined that the assessment of the credibility of Simmons should be left to the jury, the relevant question is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Commonwealth of Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In the instant case, a review of all of the evidence in the light most favorable to the government amply supports the conclusion that any rational trier of fact could have found the essential elements of the crime of conspiracy to manufacture P–2–P beyond a reasonable doubt.

As the jury was instructed, the elements of the offense charged against the defendant—conspiracy to manufacture P–2–P are: (1) that the defendant agreed to intentionally and knowingly manufacture P–2–P; (2) that the conspiracy charged existed between May 1, 1981 and February 16, 1982; and (3) that the defendant willfully and knowingly became a member of the conspiracy. *See United States v. Bland,* 653 F.2d 989, 996 (5th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981); *United States v. Dreyer,* 533 F.2d 112, 117 n. 6 (3d Cir.1976). The defendant does not contest the existence of a conspiracy to manufacture P–2–P between Simmons and Smith during the time set forth in the indictment.[8] The defendant chal-

---

ing whether the defendant is not guilty or guilty.

As you have heard, Ronald Simmons, a government witness in this case, testified pursuant to the terms of an agreement he made with the Attorney General of the State of Delaware. In State Court, Mr. Simmons pled guilty to one count of conspiring to manufacture amphetamine. This conspiracy was not related in any way to the offenses with which the defendant, Mr. Doamarel, has been charged. Mr. Simmons also agreed to testify on behalf of the Government in this case. As part of the agreement, the State of Delaware agreed to dismiss three felony counts and three misdemeanor counts relating to other drug offenses which were also not related or in any way connected to the offenses charged against Mr. Doamarel. The witness, Ronald Simmons, has also pled guilty in federal court to a crime arising out of the same occurrence for which the defendant is on trial.

Such plea bargaining, as it's called, has been approved as lawful and proper. A witness who testifies on behalf of the Government pursuant to a plea agreement with the Government in which certain charges against the witness were dismissed is competent to testify. His testimony may be received in evidence and considered by the jury whether or not it is corroborated or supported by other evidence presented in Court. However, Mr. Simmons' guilty pleas are not to be considered as evidence against the defendant.

His testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness' own interest, for a witness who realizes that he can procure a benefit by incriminating

another has a motive to falsify. If you determine that the testimony of Mr. Simmons was affected by the plea agreements, then you should keep in mind that such testimony is always to be received with caution and weighed with great care. After such consideration, you may give the testimony of Mr. Simmons such weight as you feel it deserves in deciding whether to find the defendant guilty or not guilty. However, you should never convict a defendant solely upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

Again, I caution you, that Mr. Simmons pled guilty to certain offenses should not and cannot be considered as evidence against the defendant.

**8.** The evidence of a conspiracy between Simmons and Smith to manufacture P–2–P was overwhelming and noncontroverted. In addition to the direct testimony of Simmons (Doc. 74 at A8–46; Doc. 75 at B1–87) and Smith (Doc. 77, C95–162) in which they admit participation in the conspiracy, numerous purchase orders were admitted into evidence that reflect purchases by Simmons or Smith, under the alias "John Hall," of laboratory equipment and chemicals to be used in the manufacture of P–2–P. (GXs 11–54, 56–65, 67–68). Smith admitted using the name "John Hall" (Doc. 77 at C109) when purchasing these items from the companies described by Simmons. *See infra* p. 260. Moreover, Smith was observed making casions. *See infra* p. 260 & note 10. Finally, numerous employees of various chemical and laboratory equipment companies testified that they had dealt with Simmons, Smith or both. (Doc. 76 at BB83–88 (Fraser); BB88–91 (Thomas); BB91–95 (Cesta); Doc. 77 at

lenges the sufficiency of the evidence linking the defendant to that conspiracy.

" 'Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a development and collocation of circumstances.' " *United States v. Brandon,* 633 F.2d at 780 (quoting *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). In addition to the testimony of Simmons directly linking the defendant to the conspiracy, the government introduced substantial direct and circumstantial evidence linking the defendant to the conspiracy.

Simmons testified as to the defendant's involvement in the conspiracy as follows. He met the defendant through Tyrone Smith in January, 1981 in Newark, Delaware. (Doc. 74 at A9). In April, 1981, Simmons became indebted to the defendant. The defendant suggested that Simmons could pay off the debt by manufacturing P–2–P for him. (Doc. 74 at A12–13). In May, 1981, Simmons met with the defendant, Smith and another male who told Simmons the formula for manufacturing P–2–P. (Doc. 74 at A14–18). Soon after the May meeting, Simmons began production of P–2–P. Arrangements were made for Smith and the defendant to pick up the P–2–P from Simmons. (Doc. 74 at A22). The defendant reimbursed Simmons for rental payments for the clandestine laboratory in Wilmington, Delaware and for lab equipment and chemicals. (Doc. 74 at A25–26, A39–40). In October, 1981, the defendant directed Simmons to teach Smith how to manufacture P–2–P so that Smith and the defendant could produce it in Philadelphia, Pennsylvania. (Doc. 74 at A31–32). Simmons went to Philadelphia to assist Smith and the defendant in manufacturing P–2–P. (Doc. 74 at A32, A39). Simmons continued to supply P–2–P manufactured in Delaware to the defendant. (Doc. 74 at A34).

C14–17 (McCutcheon)). None of these witnesses, however, remembered seeing the defendant at their stores or at any other time.

A note (GX 1) identified by Simmons and found at his residence in a search conducted on February 9 and 10, 1982 (Doc. 74 at A44) stated "Baz 276–8089." Simmons stated that the note referred to the telephone number of Pedro Doamarel. (Doc. 74 at A44). Another note (GX 2), found in the same search and also identified by Simmons, stated "Pedro Doamarel 276–2562." (Doc. 74 at A45–46). These phone numbers were listed under the name of Venice Brown, the defendant's sister (Doc. 77 at C124), at 7538 Gilbert Street, Philadelphia. (Doc. 77 at C37; GXs 84, 85). Documents introduced at trial linked the defendant to this address. The defendant listed 7538 Gilbert Street as his address on a credit card application. (GXs 79–80). Smith also placed the defendant in the residence at 7538 Gilbert Street (Doc. 77 at C110, C124, C131–132) and stated that 276–2562 was the defendant's telephone number. (Doc. 77 at C154). In addition, telephone toll records corroborated Simmons testimony (Doc. 71 at A42–46; Doc. 75 at B5–10; GXs 1, 2) that he spoke with the defendant on the telephone at numbers listed at 7538 Gilbert Street on numerous occasions in connection with the conspiracy. The toll records indicate that between the dates set forth in the indictment 362 calls were made between phones linked to either Simmons or the defendant. (GXs 81–89, 93, 94; Doc. 77 at C31–38).

A third note (GX 6), found in the search of Simmons's residence detailed an exchange of cash, lab equipment and chemicals, the type which could have been used in the manufacture of P–2–P,[9] between "Ron" and "Bazil," including the sale of "900 MLs of Product" for $900.00. (Doc. 75 at B11–14). Simmons testified that "product" referred to P–2–P. (Doc. 75 at B14). Both Ronald Simmons and Tyrone Smith testified that "Bazil" is a nickname used by the defendant. (Doc. 74 at A9–10; Doc. 77 at C125).

**9.** *See* Doc. 77 at C79–92. (Testimony of Jack Fasanello, a forensic chemist describing equipment, chemicals, and procedures utilized in manufacture of P–2–P.)

Simmons testified, moreover, that Smith often went to pick up lab equipment for Simmons to be used in manufacturing P–2–P at the Laboratory Glass, Co. and Ace Glass Co. in Vineland, New Jersey. (Doc. 74 at A23, A28, A36). Simmons testified that some of the chemicals for the manufacture of P–2–P were purchased from Raven Science, Inc. in Lexington, Kentucky. (Doc. 74 at A36). Evidence introduced at trial included the testimony of Special Agent Richard Compton of the DEA that he observed the defendant entering the Laboratory Glass, Co. accompanied by Tyrone Smith. (Doc. 77 at C4–6). In addition, the defendant was observed on three occasions in 1981—July 24th, September 19th and October 29th [10]—at Raven Science, Inc. with Tyrone Smith. (Doc. 76 at BB51–70). Trial testimony also disclosed that the defendant signed a car rental contract (GX 66) in his own name on July 24th in Louisville, Kentucky and that the car specified in the car rental contract was used by the defendant and Smith to pick up unidentified materials from Raven Science. (Doc. 76 at BB53–55).

█ Because the prosecution established beyond a reasonable doubt the existence of a conspiracy between Simmons and Smith to manufacture P–2–P, it had only to introduce evidence tending to show beyond a reasonable doubt that the defendant had at least a slight connection with the conspiracy. *See United States v. Brandon,* 633 F.2d at 780–81. The testimony of Simmons and the combination of circumstances and timing of events established by the evidence, and the reasonable inferences to be drawn from such evidence of the defendant's knowledge and willful participation in the conspiracy are sufficient to support the

jury's verdict of guilt beyond a reasonable doubt. *See id.* at 781.

*Motion for a New Trial—Rule 33*

Defendant has also moved for a new trial pursuant to Fed.R.Crim.P. 33 on the ground that the unsolicited referral by Tyrone Smith, a defense witness, to the defendant's previously withdrawn plea of guilty to one of the charges for which he was on trial so prejudiced the jury that he was deprived of a fair trial.[11] The government states that the evidence was so overwhelming against the defendant that the witnesses nonresponsive statement, when considered in light of the entire trial, including the Court's instructions to the jury, constituted harmless error.

The facts underlying the motion for a new trial are as follows. The defendant called Tyrone Smith as its sole witness. Smith testified that he had entered a plea of guilty (Doc. 77 at C96). At trial, Smith admitted to actually conspiring with Simmons to manufacture a controlled substance.[12] (Doc. 77 at C98–124). Smith testified that he had purchased laboratory equipment and chemicals for use in the manufacture of P–2–P as part of a scheme with Simmons. Smith stated that although the defendant accompanied him on some of these occasions, the defendant did not know of the purpose of the purchases or of the conspiracy to manufacture any controlled substance. (Doc. 77 at C98–124, 155–161).

On cross-examination, the government attempted to impeach Smith's testimony that Doamarel was not involved in the conspiracy with statements Smith made when

10. The defendant was photographed on two of these occasions. (GXs 90(a–c) (Sept. 19, 1981); 91(a–c); 92(a–g) (Oct. 29, 1981)).

11. A trial court may, pursuant to Rule 33, order a new trial in the interests of justice when it does not believe the evidence supports the jury's verdict. *United States v. Dixon,* 658 F.2d 181, 193 (3d Cir.1981). This differs from a finding under Rule 29 that the evidence when viewed most favorably to the government supports the jury's verdict irrespective of whether the Court actually agrees with that verdict or

not. If the defendant is seeking such a ruling pursuant to Rule 33, the motion will be denied. The evidence amply supports the defendant's conviction.

12. At trial no witnesses set forth clearly to which conspiracy count Smith pled guilty. The case record indicates that Smith pled guilty to conspiring to manufacture methamphetamine and that the charges of conspiring to manufacture P–2–P and amphetamine were dismissed when he was sentenced. (Doc. 22).

he entered his guilty plea. The following exchange took place at trial:

[By Mr. Gregory]

Q. Well, you entered a Guilty Plea in this case; is that correct?

[By Mr. Smith]

A. Yes, I did.

Q. And, what were you originally charged with?

A. Original Indictment charged Conspiracy to Manufacture Methamphetamine. Conspiracy to Manufacture P2P. Conspiracy to Manufacture Methamphetamine.

\* \* \* \* \* \*

Q. Let me show you what has been marked as Government's Exhibit No. 101. Looking at Page 14 where Tyrone appears and the next line down. Read that.

\* \* \* \* \* \*

A. "Tryone Smith has been duly sworn, was examined and testified as follows:".

Q. Now, I want you to look at the front of this particular document, Government Exhibit No. 101. Does this refresh your recollection as to the date when you entered your Guilty Plea?

A. August 16th.

\* \* \* \* \* \*

Q. Turning to Page—Do you recall being asked who you conspired with with respect to the charges you entered a Guilty Plea to?

\* \* \* \* \* \*

Q. Do you recall him asking that?

A. Do I recall him asking me that? I don't recall asking me who I conspired— Yes.

Q. You do recall that?

A. Yes.

Q. And, who did you say?

A. At the time he asked me the question, I really didn't know what to say. I think at the time my Lawyer advised me.

Q. Who did you say? Answer my question, please?

A. I think I said Ron Simmons and Pedro Doamarel.

Q. You think you said Ron Simmons and Pedro Doameral?

A. Yes, I can't remember exactly.

Q. Well, let me show you Page 21 of your Change of Plea, and I ask you to look at Page—top of Page 22 where it says, "Question", and that's by the Judge. Would you please read from there?

A. "[Now] did you, in fact, conspire to manufacture Methamphetamine?" Yes was my answer.

Q. Next question?

A. "Who did you conspire with?"

Q. And, what is your answer to that question?

A. Pedro Doamarel.

Q. Does the name Ron Simmons appear in the transcript?

A. No, it don't.

THE COURT: Now, the Witness wants to say something.

THE WITNESS: At the time when I said that the Lawyer had advised me to say that because both of us pleaded Guilty. At that particular time, Doamarel testified the same way. He said he was conspiring with me.

(Whereupon a Sidebar conference was held out of the hearing of the Jury.)

\* \* \* \* \* \*

(Jury back in box.)

THE COURT: Members of the Jury, I have granted a Defense Motion to strike the last portion of the testimony of this Witness in response to the last question which was asked of him.

I remind you, you should keep clearly in mind that Mr. Doamarel had pled Not Guilty of all the charges. He comes before you, at least at the start of the Trial, with a clean slate. You have heard a lot of evidence. You will be the fact-finders as to whether he is guilty or not guilty, but he has pled Not Guilty to all charges and he is entitled, and you are instructed, that that is how you should consider this matter. He pled Not Guilty. He comes before you in the beginning of

the trial with a clean slate and you go forward from there.

Does any Juror have any question as to your duty? If you do, I want you to raise your hand. If there is any question concerning the duty on the part of any Juror, this is your opportunity to raise your hand if you have one.

Let the record reflect no Juror has raised their hand.

(Doc. 77 at C146–153).[13]

Rule 52(a) of the Federal Rules of Criminal Procedure provides that any "error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."[14] The harmless error doctrine applies to constitutional as well as nonconstitutional errors. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). In the instant case the parties have not stated whether the error at trial was constitutional or not. Since the error impinged upon the defendant's right to be presumed innocent until proven guilty, see *Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979), and his constitutional privilege against self-incrimination,[15] the Court will assume, without deciding, that Smith's referral to the defendant's withdrawn guilty plea was an error of constitutional dimension. *United States v. Sikora,* 635 F.2d 1175, 1176 (6th Cir.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980).

The standard for determining whether Smith's nonresponsive answer was harmless is whether it is clear beyond a reasonable doubt that absent his statements referring to the withdrawn guilty plea the jury would have returned a verdict of guilty.[16] *See United States v. Hasting,* —— U.S. ——, ——, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). In commenting on the harmless error doctrine, the Third Circuit Court of Appeals has stated that:

a court must determine whether the constitutional error was harmless beyond a reasonable doubt and whether "there is a reasonable possibility that [the constitutional error] might have contributed to the conviction." Only when it can be said that no such possibility exists can a court conclude that the error was harmless. Of course, the closer the case, and the more important and persuasive the [prejudicial] evidence . . ., the less likely a court will

---

**13.** Defendant alleges that the Court was in error in allowing the jury to consider the defendant's withdrawn guilty plea. This allegation does not comport with the events at trial. As reflected in the trial transcript, Smith's nonresponsive answer was not admitted but stricken by the Court. Similarly, the defendant's argument that evidence of other crimes is inadmissible pursuant to Fed.R.Evid. 404(b) misses the mark. Evidence of a prior crime or of the defendant's withdrawn plea was not admitted at trial. The issue, as will be discussed, is whether Smith's nonresponsive answer, even though ordered stricken, so prejudiced the defendant as to deprive him of a fair trial.

**14.** In *United States v. Curizo,* 179 F.2d 380, 382 (3d Cir.1950), the Third Circuit Court of Appeals held that a nonresponsive answer of a witness that was prejudicial to the defendant would not require a mistrial where the jury was instructed to disregard the testimony and the conviction was brought about by ample and persuasive evidence of the defendant's guilt. *See Marsh v. United States,* 82 F.2d 703, 704 (3d Cir.1936). In reaching this conclusion, the Court utilized the same analysis used to assess whether evidence admitted as a result of a trial court error necessitated a new trial. 179 F.2d at 382. Applying the reasoning of *Curizo* to this case, the test for whether a new trial is required will be the same utilized when a court errs in admitting evidence at trial.

**15.** In addition, pursuant to Fed.R.Crim.P. 11(e)(6)(A), (C), any statements made by a defendant while entering a guilty plea cannot be used against the defendant at a later trial.

**16.** If the error was non-constitutional, then, unless there is a reasonable possibility that the error contributed to the conviction, reversal is not required. *Gov't of the Virgin Islands v. Bedford,* 671 F.2d 758, 762 (3d Cir.1982). Stated another way, the issue to be determined is whether it is highly probable that the evidence of the defendant's guilty plea did not contribute to the jury's verdict. *Gov't of the Virgin Islands v. Toto,* 529 F.2d 278, 283–84 (3d Cir. 1976); *see United States v. Cook,* 538 F.2d 1000, 1005 (3d Cir.1976). A comparison of the tests for non-constitutional and constitutional errors indicates that in this circuit the two standards are substantially similar. *See Gov't of the Virgin Islands v. Carino,* 631 F.2d 226, 230 (3d Cir.1980).

find the error harmless.... The clearer the case and the more overwhelming the untainted evidence, the more likely it is that a court will reach that conclusion. [citations omitted].

*United States v. Molt,* 615 F.2d 141, 145 (3d Cir.1980) (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963), and citing *Chapman v. California,* 386 U.S. at 22, 24, 87 S.Ct. at 827, 828); *see United States v. Scarfo,* 685 F.2d 842, 845–46 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). The mere fact that the untainted evidence was sufficient to sustain a defendant's conviction, however, does not necessitate a determination that the introduction of prejudicial evidence which infringes upon a defendant's constitutional rights constitutes harmless error. *See United States v. Molt,* 615 F.2d at 145. In assessing whether an error is harmless, all of the factors and circumstances of a particular case must be examined. *United States v. Hasting,* —— U.S. at ——, 103 S.Ct. at 1980; *United States v. Carney,* 461 F.2d 465, 468 (3d Cir.1972).

As set forth in the discussion of the sufficiency of the evidence, *supra* at 8–10, the evidence of the defendant's guilt is overwhelming.[17] The defendant was linked by direct and circumstantial evidence to a conspiracy between Simmons and Smith to manufacture P–2–P. Simmons testified as to the defendant's direct involvement in the conspiracy. Although Simmons' credibility is questionable given the inducements offered to secure his testimony, many elements of his version of the defendant's involvement were corroborated by independent evidence—the notes found in Simmons' residence, the telephone toll records and the testimony of Smith. Direct evidence placed the defendant in the company of Tyrone Smith on numerous occasions while Smith was engaged in activities in furtherance of the conspiracy with Simmons to manufacture P–2–P. In addition, the defendant rented the car in Lexington, Kentucky, when he and Smith went to purchase chemicals at Raven Science, Inc.

The exculpatory evidence adduced at trial consisted of Smith's testimony regarding the defendant's ignorance of and lack of participation in any conspiracy and the lack of evidence that the defendant actually purchased lab equipment or chemicals. (Doc. 77 at C101). The telephone toll records corroborate Smith's testimony that he stayed often at this residence and received the phone calls from and made the calls to Simmons. (Doc. 77 at C110–11, C131–32). In addition, evidence was adduced at trial that the defendant was not identified by any witness as an actual purchaser of lab. equipment or chemicals. *See supra* note 8. Moreover, evidence was adduced at trial that the defendant used his own name in all of his acts done in connection with the conspiracy. (GX 66). Finally, the defendant also had a job at this time (Doc. 77 at C102) and the defendant argued in summation that he had no motive to deal in drugs.

This exculpatory evidence does not significantly diminish the strength of the government's case. The credibility of Smith, an admitted friend of the defendant (Doc. 77 at C97), was subject to doubt. His statements that the defendant did not even know why Smith purchased chemicals and laboratory equipment, let alone that he was not a participant, were highly questionable. So was Smith's testimony that he and not the defendant made or received all of the calls to Simmons from the residence of the defendant's sister on Gilbert Street. The failure of any witness to identify the defendant as an actual purchaser of chemicals or equipment is consistent with Simmons' testimony that Smith and he, not the defendant, made the purchases. In addition, Smith possessed false identification under the alias of John Hall. The defendant's use of his real name when renting a car in Kentucky can be explained by the fact that the defendant possessed a credit card which greatly facilitated the renting of a car. Finally, employment is no guarantee that a person will not engage in criminal activity.

17. The inculpatory evidence will not be described in detail again.

In addition to the strength of the evidence against the defendant, the jury's verdict indicates that they were able to disassociate the stricken testimony from their consideration of the defendant's guilt or non-guilt. Smith testified that he had pled guilty but he did not specify to which counts of the three-count indictment he pled guilty. On cross-examination, the prosecutor did not ask him to which charge he plead. The only statement by the witness that was indicative of which count he plead to was his statement in which he admitted stating at the time he entered his guilty plea he conspired to manufacture methamphetamine. (Doc. 77 at C149, lines 24–25). Smith never explicitly stated to which count or counts he or the defendant pled guilty. He stated that at the time the defendant and he pled guilty, the defendant testified "the same way" as he did regarding who he had conspired with. (Doc. 77 at C150, lines 9–13).

From this exchange, the jury could have concluded that the defendant pled guilty to Count I, conspiring to manufacture methamphetamine or to all three counts. Perhaps more likely, the jury may have been uncertain as to which count or counts the defendant pled guilty. In any event, the jury's acquittal of the defendant on two of three counts supports the conclusion that they were not influenced by Smith's stricken testimony. If they believed the defendant pled guilty to conspiring to manufacture methamphetamine, they acquitted him on this count. If they believed he pled guilty to all three counts, or were uncertain as to which count or counts he pled guilty, they acquitted the defendant on those counts for which there was not sufficient evidence to support a finding of guilt beyond a reasonable doubt. It should be noted that the jury's verdict was fully consistent with the evidence adduced at trial. The government offered little evidence of the existence of conspiracies to manufacture methamphetamine or amphetamine let alone the defendant's involvement in these conspiracies.

■ While concerned about protecting the defendant's constitutional right to a fair trial, the Court is mindful of its duty " 'to conserve judicial resources by enabling . . . courts to cleanse the judicial process of prejudicial error without being mired in harmless error.' " *United States v. Hasting,* —— U.S. at ——, 103 S.Ct. at 1980 (quoting R. Traynor, *The Riddle of Harmless Error* 81 (1970)). Viewing Smith's statement in the context of the strength of the untainted evidence against the defendant, the instructions to the jury during and at the end of trial, and the jury's verdict of acquittal of two of three counts, the Court is convinced beyond a reasonable doubt that the jury would have returned a verdict of guilty absent the inadvertent introduction of evidence of the defendant's withdrawn guilty plea. Unlike *Chapman v. California,* 386 U.S. at 25–26, 87 S.Ct. at 828–829, this is not a case where "absent the constitutionally forbidden comments, honest fairminded jurors might very well have brought in not-guilty verdicts."

■ Finally, the defendant argues that the Court's curative instruction (Doc. 77 at C152–53) was inadequate. The defendant claims that the Court should have explained to the jury all of the circumstances surrounding the defendant's withdrawal of his guilty plea. The Court has considerable reservations that any defense attorney, especially one of considerable experience, would actually seek such an instruction. Moreover, at trial, the defendant's attorney stated: "I think it is safer to instruct the Jury that the Court has sustained a Motion to Strike that part of this testimony, the latter part of his testimony." (Doc. 77 at C151, lines 20–23; *see also* Doc. 83 at 4, lines 1–16). The Court instructed the jury as requested by the defendant. To instruct the jury as the defendant now states should have been done would have drawn undue attention to Smith's improper statements. More importantly, in the absence of plain error, the Court will not declare a mistrial on the ground of the impropriety of an instruction where that instruction was requested by the defendant at trial. *See id.*

*Conclusion*

In summary, the defendant's motion for a judgment of acquittal and a new trial will be denied. An appropriate order will issue.